Rick HERR, individually and as natural father of Allen Herr, et al., Plaintiffs,

v.

CAROLINA LOG BUILDINGS, INC., et al., Defendants.

James Wayne SCOTT, et al., Plaintiffs,

v.

CAROLINA LOG BUILDINGS, INC., et al., Defendants.

Jack HART, individually and as natural father of Jewelee Hart, et al., Plaintiffs,

v.

CAROLINA LOG BUILDINGS, INC., et al., Defendants.

Lee BARTLEY, et al., Plaintiffs,

v.

CAROLINA LOG BUILDINGS, INC., et al., Defendants.

Detrick BICE, individually and as Natural Father of Deann Bice, et al., Plaintiffs,

v.

CAROLINA LOG BUILDINGS, INC., et al., Defendants.

Michael LOEHR, individually and as natural father of Michael Ruel Loehr, et al., Plaintiffs,

v.

CAROLINA LOG BUILDINGS, INC., et al., Defendants.

Steven CLUTTER, individually and as natural father of Seth Clutter, et al., Plaintiffs,

v.

CAROLINA LOG BUILDINGS, INC., et al., Defendants.

Nos. EV 85–262–C to EV 85–268–C.

United States District Court, S.D. Indiana, Evansville Division.

Sept. 22, 1989.

Michael D. Schwartz, Farrell & Schwartz, Minnetonka Corporate Center, Minnetonka, Minn., and Tyrone P. Bujold, James P. Coy, Susan Richard Nelson, Barbara Colombo Nerness, Robins Kaplan Miller & Ciresi, Minneapolis, Minn., for plaintiffs.

Thomas H. Bryan, Fine & Hatfield, Evansville, Ind., and Robert Mark Field, Robert A. McLean, McDonnell Boyd Smith & Solmson, Memphis, Tenn., for Chapman Chemical.

John G. Crutchfield, Ewen MacKenzie & Peden, P.S.C., Louisville, Ky., and Gerald Allega, Clark Statham McCray Thomas & Krohn, Evansville, Ind., for Vulcan Materials Co.

## MEMORANDUM

BROOKS, Chief Judge.

The plaintiffs in these actions purchased log cabin kits. The building materials in the kits had been treated with pentachlorophenol (hereafter "penta"). Plaintiffs allege that as a result of the use of penta in interior surfaces, they sustained physical injuries and their homes became unfit for habitation. Their amended complaints are in three counts.

In Count I, the plaintiffs contend that the chemicals, wood preservative, and treated building materials produced by the defendants and put into the stream of commerce were unsafe for their intended use by reason of the following defects:

(a) the building materials were treated with various chemicals, including penta, and as such were unsafe for humans, plants, or animals;

(b) the chemicals, wood preservative, and treated building materials were not properly marked and labeled for the physical hazards involved, and failed to adequately warn users of the proper manner of use and magnitude of the risks involved; and

(c) the chemicals, wood preservative, and treated building materials were improperly designed and tested for their intended use.

In Count II, the plaintiffs contend that the defendants were negligent in the "testing, inspection, design, manufacture, assembly, labeling, processing, use and marketing of the chemicals and of the wood preservative for their application to the building materials." (Amended Complaint, ¶ 26) The negligent acts of the defendants include "failure to reasonably test and inspect the chemicals and the composition of the wood preservative used to treat the building materials; failure to adequately warn foreseeable users of the physical hazards involved in using the chemicals, the wood preservative and the treated building materials; failure to design a label warning for the chemicals, for the wood preservative and for the treated building materials; failure to use proper chemicals in the manufacture of the wood preservative; failure

to use proper wood preservatives in the manufacture of the building materials; and failure to produce a product which was suitable for residential construction and adequate to withstand fire, twisting and rot."

In Count III of the amended complaints, plaintiffs allege that the defendants knew of serious hazards to human health caused by exposure to building materials treated with penta and failed to fully disclose that information to these plaintiffs. Plaintiffs allege that they "relied upon these defendants' continuing misrepresentations regarding the effects of, absence of risk in and safety associated with extensive exposure within their log homes." Plaintiffs contend that their injuries were as a result of their reliance on these misrepresentations.

Defendant Reichhold has filed its Supplemental Motion for Summary Judgment which contends that these claims are preempted by federal law, and particularly the Federal Insecticide, Fungicide and Rodenticide Act (hereafter "FIFRA"), 7 U.S.C. § 136, *et seq.* Defendant Reichhold contends that the clear language of FIFRA requires that it preempt these plaintiffs' claims for damages. Defendant Reichhold contends that the state law claims based on theory of negligent labeling and failure to warn are preempted by FIFRA and point to several state cases that have so concluded. (*See* cases cited in Exhibits B, C, and D of the Supplemental Memorandum.) In addition, defendant Reichhold argues that this Court should follow the rationale of *Fitzgerald v. Mallinckrodt, Inc.,* 681 F.Supp. 404 (E.D.Mich.1987), and *Kennan v. Dow Chemical Company,* 717 F.Supp. 799 (M.D.Fla.1989). The plaintiffs respond with the argument that there are limited circumstances under which the doctrine of preemption will apply, particularly with respect to the field of health and safety. Plaintiffs contend that this Court should follow *Ferebee v. Chevron Chemical Co.,* 736 F.2d 1529 (D.C.App.1984), and other cases which have concluded that FIFRA does not preempt state tort claims. Those cases include a case within this Circuit, *Roberts v. Dow Chemical Co.,* 702 F.Supp.

195 (N.D.Ill.1988). This Court's review of the cases cited indicates a clear split of authority on the preemption issue.

All cases cited do stand for the proposition that under preemption analysis it is critical to look at the language of the statute in question. *Id.* at 198. Subsections 136v(a) and (b) of Title 7 of the United States Code provide as follows:

(a) A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this subchapter.

(b) Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter.

This Court concludes that the language in § 136v was intended to leave to the states the authority to impose stricter regulations *on pesticide use* than that required under the Act. *See also* H.R. 10729; S.Rep. No. 970, 92nd Cong., 2nd Sess., *reprinted in* 1972 Cong.Code and Admin.News 3993 at 4021, 4128 (emphasis added). (Plaintiffs' Memorandum, Exhibit 3) However, by equally impressive mandatory language, subsection (b) of § 136v does prohibit the state "impos[ing] or continu[ing] in effect any requirements for labeling ... in addition to or different from those required under this subchapter." The effect of these two provisions when read together leads this Court to the same conclusion as Judge Black in *Kennan v. Dow, supra.* A jury in this case is not preempted from finding that, for example, the use of penta on interior surfaces was an unreasonably dangerous use of the product, or that the product was defective for those purposes. Likewise, the jury may conclude that penta was improperly designed and tested for its use in interior surfaces. The jury may conclude that the defendants were negligent in failing to perform reasonable tests and inspections on the chemicals, wood preservative, and treated building materials to determine

their effects on human beings who live in close proximity. The jury is free to find that the defendants knew or should have known that these products cause serious hazards to human health and failed to disclose those facts to the Environmental Production Agency (hereafter "EPA") or to the purchasers of the products through their written materials other than labels and/or through sales representatives. At trial, facts may or may not support any of these theories. However, the clear language of 7 U.S.C. § 136v(b) precludes the jury from assessing liability because the warning label approved by the EPA was not adequate for the task of warning potential users of the hazards. The Court concludes that the area preempted by Congress under FIFRA was a very limited one. The only aspect of the use of the pesticide which is preempted are those actions involving "requirements for labeling or packaging." In this case, plaintiffs are preempted from recovering under subparagraph 17(B) and under paragraphs 26 and 27 for causes of action due to "negligent failure to design a label warning for the chemicals." All other causes of action remain viable. The Court believes that the holding in *Fitzgerald v. Mallinckrodt, supra,* which holds that the defendants have a "choice of reaction" should be properly rejected in this case as it was in *Palmer v. Liggett Group, Inc.,* 825 F.2d 620 (1st Cir. 1987). Facts found in jury verdicts in state tort claims may in fact cause the manufacturer to petition the EPA to change the warnings which it uses. However, under FIFRA, the jury may not determine that a deficiency in the label, in and of itself, requires a finding of liability for the plaintiffs' damages.

Therefore, this Court concludes that the Supplemental Motion for Summary Judgment should be GRANTED, in part, and DENIED, in part. The motion is GRANTED and plaintiffs' amended complaints are hereby DISMISSED as to subparagraph 17(B) and to those portions of paragraphs 26 and 27 which claim causes of action related to negligent failure to warn or label. In all other respects, the Supplemental Motion for Summary Judgment is DENIED.